**Donald J. REID, Plaintiff,**

**v.**

**Irwin MANN, Defendant.**

**No. 74 C 896.**

United States District Court, N. D. Illinois, E. D.

Sept. 9, 1974.

Kenneth Franson, Homewood, Ill., for plaintiff.

Robert Morel Gray, Cirricione, Block & Krockey, P. C., Joliet, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff herein, Donald J. Reid, brings this action under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), charging that the defendant fraudulently induced him to purchase 50,000 shares of Class B stock of Scope Research, Inc., an Illinois corporation, for $15,000. Alleging that certain instrumentalities of interstate commerce were used, the plaintiff paraphrases the statutory language of § 17(a) in claiming that the defendant delivered certain false and misleading financial statements upon which the plaintiff detri-

mentally relied when entering into the purchase. As redress for the alleged fraud, the plaintiff seeks rescission of the contract, $15,000 in actual damages, and $45,000 in punitive damages.

■■ The defendant has responded by filing a motion to dismiss, raising the following four grounds: (1) the plaintiff may not bring a private action for damages based upon § 17 of the 1933 Securities Act; (2) the transaction did not involve the use of any of the instrumentalities of interstate commerce required for federal jurisdiction under the 1933 Act; (3) the complaint is insufficient as it fails to comply with the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure; and (4) punitive damages are not recoverable under the 1933 Act. We find that the defendant's first contention, that no private right of action may be based upon § 17, is persuasive, and accordingly the plaintiff has no standing to bring the action in its present form. Because this ground effectively disposes of the entire matter, we need not consider the substantial questions surrounding the interstate nature of the transaction, or the adequacy of the plaintiff's complaint. Nor do we reach the well settled proposition that punitive damages are unavailable for a violation of the 1933 Act. Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969), cert. denied 397 U.S. 913, 90 S.Ct. 913, 25 L. Ed.2d 93 (1970).

Section 17(a) provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

It is readily apparent that there is no express private civil remedy provided for in § 17(a). Statutory construction and legislative history also negates the argument that there is an implied right of action. Viewing the 1933 Act in its entirety, both §§ 11 and 12 contain express provisions for civil remedies, which creates the reasonable inference that the absence of such a remedy in § 17 was not an oversight or the product of inartful draftsmanship. Rather, as expressed by Judge Friendly in his concurring opinion in SEC v. Texas Gulf Sulfer Co., 401 F.2d 833 at 867 (2d Cir. 1968), cert. denied sub nom, Coates v. SEC, 394 U.S. 976, 89 S.Ct. 1454, 22 L. Ed.2d 756 (1968):

[T]here is unanimity among the commentators, including some who were in a peculiarly good position to know, that § 17(a)(2) of the 1933 Act—indeed the whole of § 17—was intended only to afford a basis for injunctive relief and, on a proper showing, for criminal liability, and was never believed to supplement the actions for damages provided by §§ 11 and 12. *See* Landis, Liability Sections of the Securities Act, 18 Am.Acct. 330, 331 (1933); Douglas and Bates, Federal Securities Act of 1933, 43 Yale L.J. 171, 181–82 (1933); Loss, Securities Regulation 1785–86 (1961). When the House Committee Report listed the sections that "define the civil liabilities imposed by the Act" it pointed only to §§ 11 and 12 and stated that "[t]o impose a greater responsibility [than that provided by §§ 11 and 12] . . . would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the. public." H.Rep. No. 85, 73d Cong., 1st Sess. 9–10 (1933).

Professor Loss reads the section similarly, lending considerable credence to the statements of Commissioner Landis who played a dominant role in the drafting of the 1933 Act. In a November 1933 address, Commissioner Landis commented:

The suggestion has been made on occasion that civil liabilities arise also from a violation of Section 17, the first subsection of which makes unlawful the circulation of falsehoods and untruths in connection with the sale of a security in interstate commerce or through the mails. But a reading of this section in the light of the entire Act leaves no doubt but that violations of its provisions give rise only to a liability to be restrained by injunctive action or, if wilfully done, to a liability to be punished criminally.

Loss goes on to stress that there is a significant difference between the 1934 Securities and Exchange Act, which does have a private right of action, and § 17 of the 1933 Act.

It is one thing to imply a private right of action under § 10(b) or the other provisions of the 1934 Act, because the specific liabilities created by §§ 9(e), 16(b), and 18 do not cover all of the variegated activities with which the act is concerned. But it is quite another thing to add an implied remedy under § 17(a) of the 1933 Act to the detailed remedies specifically created by §§ 11 and 12. The 1933 Act is a much narrower statute. It deals only with disclosure and fraud in the sale of securities. It has but two important substantive provisions, §§ 5 and 17(a). Noncompliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 Act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But

the very restrictions in those sections and the differences between them . . . make it seem less justifiable to permit plaintiffs to circumvent the limitations of § 12 by resort to § 17(a). Particularly is this so in view of the fact that § 11, together with the statute of limitations in § 13, was actually tightened in the 1934 amendments to the Securities Act. 3 Loss, Securities Regulation 1784–85 (2d ed. 1961).

Professor Ruder also reaches the same conclusion, emphasizing that:

The most reasonable view regarding Section 17(a) of the 1933 Act is that Congress intended that the Commission would use it to deal with flagrant cases of abuses. Evidence of this point of view appears in connection with an amendment offered by Senator Fletcher to Title II of the 1934 Act, which was an amendment to the 1933 Act. . . . Senator Fletcher then asked to have a memorandum explaining the amendment printed in the *Congressional Record.* At the end of the memorandum the following statement appears: "It is to be noted that enforcement of the provisions of the new subsection is left to injunction, stop order, and criminal prosecution. *No civil liability attaches for any violation thereof.*" [Emphasis in the original]. Ruder, Civil Liability under Rule 10b–5: Judicial Revision of Legislative Intent? 57 Nw.U.L.Rev. 627, 656 (1963).

Drawing upon such analysis, several courts have determined that § 17 was not intended to be used as a basis for private civil remedies. Hardy v. Sanson, 356 F.Supp. 1034 (N.D.Ga.1973); Dyer v. Eastern Trust and Banking Co., 336 F.Supp. 890 (D.Me.1971); Trussell v. United Underwriters, Ltd., 228 F. Supp. 757 (D.Colo.1964). *See also,* Donlon Industries, Inc. v. Forte, 402 F.2d 935 (2d Cir. 1968); Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967); Weber v. C.M.P. Corp., 242 F. Supp. 321 (S.D.N.Y.1965). While we

adhere to their view, we are aware that there remains a divergence of opinion on the subject. The Supreme Court has not, as yet, considered the question, and several courts have purposely avoided dealing with this most "vexing question." Unicorn Field, Inc. v. Cannon Group, Inc., 60 F.R.D. 217 (S.D.N.Y. 1973).

Those courts which have accepted the existence of a private right of action, have generally done so without considering substantively whether the right has any statutory foundation. Many of these cases have relied on the holding in Osborne v. Mallory, 86 F.Supp. 869 (S. D.N.Y.1949), which was the first case to accept a private right of action under § 17(a). In *Osborne,* the court paralleled § 17(a) with 10b–5 of the 1934 Act, for which a private right of action had already been recognized. The court simply applied the rationale supporting an implied right of action in the 1934 Act, and concluded that there was little justification for not allowing the same rights and remedies under each act. Thereafter, the courts finding a private right of action have generally assumed, without deciding, that the *Osborne* application of § 17(a) is controlling. We do not agree.

■ First, it is well accepted that those protected by a prohibitory statute have a private right of action unless the legislature clearly indicates that no such right exists. Texas & P. Ry. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Consistent with this general rule, an analysis of the drafters' intent, as expressed *supra,* strongly indicates that no such right was intended. Secondly, while the courts deal with the two securities acts *in pari materia* and construe them as one comprehensive scheme of regulation, important jurisdictional distinctions exist between the acts. Claims falling within the parameter of the 1933 Act could be brought before either a state or federal forum, while violations of the 1934 Act are only maintainable in federal courts. Allowing a private right of action where the latter Act is the basis of jurisdiction therefore is essential for complete coverage of the wrongs proscribed by the 1934 Act. Alternatively, an aggrieved party may bring an action for violations of the 1933 Act in federal court under §§ 11 or 12, if appropriate, or may seek redress in the state courts under state securities regulations or general fraud statutes. Also, since many claims which appear to arise out of § 17(a) are encompassed by 10b–5, this provides yet another federal jurisdictional alternative. Denial of a private right of action under § 17(a) by no means leaves a party without an available remedy.

Finally, neither the litigants nor the court have been able to discover a single case in which a private right of action under § 17(a) was permitted where the plaintiff did not also allege a 10b–5 claim for the same conduct. Under such circumstances, federal courts have permitted a § 17(a) claim to be included. duPont v. Wyly, 61 F.R.D. 615 (D.Del. 1973); Unicorn Field, Inc. v. Cannon Group, Inc., *supra.* We are faced in the instant case, however, with a naked § 17(a) claim devoid of any 10b–5 allegations. Accordingly, because we have concluded that § 17(a) does not give rise to any federal private right of action, the defendant's motion to dismiss must be granted.

An appropriate order will enter dismissing this action for lack of jurisdiction.