The LINCOLN NATIONAL
BANK, Plaintiff,

v.

John B. LAMPE, etc., et al., Defendants.

No. 75 C 2806.

United States District Court,
N. D. Illinois, E. D.

March 11, 1976.

Louis Linton Dent, Edward P. McNeela and Gary L. Griffin, Dent, Hampton & McNeela, Chicago, Ill., for plaintiff.

Douglas M. Reimer and Robert E. Nord, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant Fed. Ins.

Robert F. Forrer and Kent Chandler, Jr., Wilson & McIlvaine, Chicago, Ill., for defendant First Nat. Bank of Lake Forest and Herber.

Elmer R. Segal, Chicago, Ill., for Lampe.

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff The Lincoln National Bank, asserting that it has been defrauded in several transactions concerning defendant Lampe, has brought this action against Lampe and others under various provisions of federal securities law and in an action for common law fraud.

Count I is based on Section 17 of the Securities Act of 1933 (15 U.S.C. § 77q),[1] Section 10 of the Securities Exchange Act of 1934 (15 U.S.C. § 78j),[2] and under Rule 10b–5, and concerns the same factual situation as Count III, the pendent state law fraud claim.

The gist of these two counts is that plaintiff Lincoln National Bank lent $842,000. to Lampe[3] on the basis of five promissory

---

1. Section 17 reads as follows:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

"(b) It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

"(c) . . ."

2. Section 10 reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

"(a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

3. Although the exact nature of the loan is not clear from the complaint, it is alleged that the $842,000 was in fact borrowed by Lampe, in his own name, and as trustee of the John B. Lampe Trust, and by Spaco Manufacturing Company,

notes[4] executed between April 10 and September 17, 1974. The security for these notes consisted of stock certificates[5] representing substantial amounts of purported shares of common stock in Kennecott Copper Corp., American Airlines and Rheingold Corp.

Subsequently it was discovered that these stock certificates were worthless counterfeits; the loans have proven to be uncollectible and are in default.

Prior to their delivery to plaintiff, the counterfeit stocks had been deposited between November, 1972, and January, 1973 into an escrow account in the trust department of defendant First National Bank of Lake Forest.

Plaintiff Lincoln National Bank asserts that between December 1, 1973, and December 1, 1974, various representations were made by Lampe, Spaco, First National Bank of Lake Forest ("Lake Forest") and its Executive Vice President, James Herber, who is also named as a defendant in this action, concerning Lampe's financial condition. Lincoln National Bank ("Lincoln Bank") asserts that it relied on these representations, which it alleges to have been false, and consequently made its unfortunate decision to lend Lampe the $842,000.

Count II alleges that in December, 1974, Lampe endorsed and delivered to Lake Forest stock certificates for 524,090¾ shares of Spaco to be held by Lake Forest for its benefits and that of plaintiff Lincoln Bank. Lake Forest assigned these stocks to its surety, defendant Federal Insurance Company, and the latter promptly sold the stock for a consideration of $170,000. Lincoln Bank demands the proceeds of this sale, asserting violations of the 1933 and 1934 securities acts, and an infraction of Rule 10b–5.

Defendants have filed a series of motions which will be discussed as applied to each of the counts of the complaint.

*Count I.*

A.  *Plaintiff's Securities Law Claim.*

Count I essentially depicts a fraudulent loan transaction between Lampe and Lincoln Bank. In order to bring this incident under the umbrella of federal law, the complaint alleges that the promissory notes must be considered as securities under the meaning of the 1933 and 1934 Acts and Rule 10b–5. Alternatively, plaintiffs contend that the act of pledging stock certificates as collateral constituted an offer for sale and sale of securities under the definition of securities law. All defendants deny this and have moved to dismiss the complaint for failure to state a cause of action under either Act.

B.  *The Promissory Notes.*

■ This court is not persuaded that the complaint has alleged any grounds under which the promissory notes executed by Lampe can be viewed as securities under federal law.

Both the 1933 Act and the 1934 Act have exceptions which exclude protection for notes whose maturity does not exceed nine months. However, it is clear from recent opinions that the critical distinction is not that between short term and long term notes, but rather the difference between *commercial* and *investment* paper.

A much cited Fifth Circuit opinion, *McClure v. First National Bank of Lubbock, Texas*, 497 F.2d 490, 494–95 (5th Cir. 1974), has construed the 1934 Act as follows:

"On one hand, the Act covers all *investment* notes, no matter how short their maturity, because they are not encompassed by the 'any note' language of the

a Delaware corporation controlled by Lampe. The court will refer to these defendants as the Lampe defendants.

**4.** Four of the notes, totaling $542,000, were demand notes, and the fifth note, for $300,000, was for three months.

**5.** The stock certificates are alleged to have been assets of the John B. Lampe Trust.

exemption. On the other hand, the Act does not cover any *commercial* notes, no matter how long their maturity, because they fall outside the 'any note' definition of a security. Thus, the investment or commercial nature of a note entirely controls the applicability of the Act, depriving of all utility the exemption based on maturity-length."

The Seventh Circuit has followed this reasoning, holding in *C. N. S. Enterprises, Inc. v. G. & G. Enterprises, Inc.*, 508 F.2d 1354 (7th Cir. 1975), that "[t]he ultimate question is whether the plaintiffs are simply borrowers in a commercial transaction who are not protected by the 1934 Act or investors in a securities transaction who are protected." 508 F.2d at 1359. *See also, Sanders v. John Nuveen & Co., Inc.*, 463 F.2d 1075, 1079 (7th Cir. 1972).

There is nothing whatsoever in the complaint to indicate that these promissory notes were not run-of-the-mill commercial notes. Paragraph 5 does no more than to state that "Lampe, Trustee and Spaco borrowed from plaintiff on their promissory notes on the following dates the following sums of money: [followed by a listing of the five notes by number, date, amount and maturity]." In paragraph 6 there is the unsubstantiated conclusion that these notes are securities. This is insufficient to establish that the five notes should be categorized as investment paper.

This complaint suffers from defects similar to those noted by the Seventh Circuit in *C. N. S., supra.* In that case the plaintiffs also failed to take the prudent step of attaching a copy of the promissory note upon which they asserted federal jurisdiction. The Seventh Circuit agreed with the district court's decision to dismiss the complaint for want of jurisdiction, noting

"Nothing alleged in the complaint indicated in any way that the bank was an investor in the business or a co-partner in

the enterprise. The impetus for the transaction appears to have come from the borrowers who needed cash to complete the purchase. . . . The complaint was silent as to any of the factors which conceivably might tend to transform an ordinary commercial loan into an investment security." 508 F.2d at 1362–63.

An even closer precedent may be found in the case of *Avenue State Bank v. Tourtelot*, 379 F.Supp. 250 (N.D.Ill.1974). In that case the plaintiff bank loaned the defendant $200,000 in exchange for short term promissory notes, relying upon misrepresentations of the extent of the assets pledged as security. Judge Marovitz, relying upon the Seventh Circuit holding in *Sanders v. John Nuveen & Co., Inc.; supra,* as well as the Fifth Circuit holding in *McClure, supra,* dismissed the complaint on the grounds that such notes were purely commercial and beyond the protection of the securities laws.

Another case cited by Judge Marovitz, *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973), is equally instructive, where the Third Circuit ruled that the notes

"were personal promissory notes issued by a private party. There was no public offering of the notes, . . . The notes were not procured for speculation or investment." 487 F.2d at 694.

*See also, Bellah v. First National Bank of Hereford, Texas*, 495 F.2d 1109 (5th Cir. 1974).

As noted the complaint is totally barren of any factual allegations indicating some unique investment aspect to this loan transaction. That this loan proved to be unduly risky and ill-advised does not in itself convert it into a speculative investment.

Plaintiff Lincoln Bank argues in its memorandum that this court should consider the factors listed by the Seventh Circuit in *Nuveen* and *C. N. S.* for their utility in threshing out investments from the commercial loan chaff.[6] These factors are indeed valu-

---

**6.** *C. N. S.* lists six criteria: (1) how the instrument is characterized by the business community, (2) the intended use of the proceeds of the loan (purchase of goods or general financing of the enterprise), (3) extent of reliance on efforts of others (including degree of risk, extent of collateral rights given to the payee, etc.,) (4) number of notes issued, number of payees, dol-

able tools to the courts in certain cases, but avail Lincoln Bank no more than they did C. N. S. where the complaint fails to recite any facts upon which a court might determine the existence of an investment security.[7]

While most of the above cases concentrate upon the 1934 Act and Rule 10b–5, it is clear that the identical logic bars a securities claim based on the promissory notes under the 1933 Act.[8] The Supreme Court has indicated in *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), that its interpretation of the term "securities" under the 1934 Act is founded upon reference to the 1933 Act's definition of the same term.

■ Furthermore, it is extremely doubtful that plaintiff can have standing to raise a claim for damages under § 17(a) of the 1933 Act in the absence of a valid claim under the 1934 Act. A scholarly opinion by Judge Will in *Reid v. Mann,* 381 F.Supp. 525 (N.D.Ill.1974), has concluded that there is no basis for implying a private civil remedy in § 17(a). Judge Will quotes such authorities as Professor Loss and Professor Ruder, as well as the informative observations of Judge Friendly in his concurring opinion in *S. E. C. v. Texas Gulf Sulphur Co.,* 401 F.2d 833, at 867 (2d Cir. 1968), *cert. denied sub nom., Coates v. S. E. C.,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Judge Will concedes that there is some dispute on this point, and indeed the Supreme Court has recently again refused to resolve the issue in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 1924, n. 6, 44 L.Ed.2d 539 (1975).

While previous Seventh Circuit dictum may have taken an opposite position, *Su-*

*rowitz v. Hilton Hotels Corp.,* 342 F.2d 596, 604 (7th Cir. 1965), *rev'd on other grounds,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), that court has declined the opportunity to reaffirm the existence of a private civil remedy under § 17(a) in light of the *Reid v. Mann, supra,* opinion. *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1293, n. 6 (7th Cir. 1975).

The opinion in *Reid v. Mann, supra,* stressed that "neither the litigants nor the court have been able to discover a single case in which a private right of action under § 17(a) was permitted where the plaintiff did not also allege a 10b–5 claim for the same conduct." 381 F.Supp. at 528. In the context of a "naked § 17(a) claim devoid of any 10b–5 allegations", the court found no basis to imply a private right of action. In the instant circumstances, where no valid claim has been asserted under the 1934 Act or Rule 10b–5, any arguable claim under the 1933 Act should be properly viewed as a "naked § 17(a) claim" insufficient to provide standing for a private action for damages.

■ This court concludes, therefore, that the promissory notes involved in this lawsuit do not constitute "securities" as defined in either the 1933 or 1934 Act, and that plaintiff cannot allege any federal claim for relief based upon these notes under either Act against any defendant.

## C. The Pledge of Stock Certificates.

Lincoln Bank alternatively argues that it may invoke the 1933 and 1934 Acts on the basis that the pledge of the allegedly counterfeit stock certificates constituted an offer to sell or a sale of securities.

---

lar amount of transaction, (5) maturity date of the offering, (6) characterization of the notes on financial statements. 508 F.2d at 1361.

In *Sanders v. Nuveen, supra,* the court cited four factors for identifying commercial paper: "(1) prime quality negotiable commercial paper (2) of a type not ordinarily purchased by the general public, that is, (3) paper issued to facilitate well recognized types of current operational business requirements and (4) of a type eligible for discounting by Federal Reserve banks." 463 F.2d at 1079.

7. Plaintiff's memorandum goes beyond the complaint, asserting various facts not to be found therein, and relying upon an affidavit which was stricken by order of this court.

8. *Avenue State Bank v. Tourtelot, supra,* did expressly consider a claim under the 1933 Act, and the Fifth Circuit indicated in dictum in *Bellah v. First National Bank of Hereford, Texas, supra,* that it considered its exclusion of "commercial" promissory notes from 1934 Act coverage applicable to the 1933 Act as well.

■ There is no dispute that counterfeit and forged stock certificates are securities within the meaning of the Acts. *Seeman v. U. S.,* 90 F.2d 88, 89 (5th Cir. 1937).

However, plaintiff has failed to cite any applicable case law indicating that a *pledge* of securities in the context of a commercial loan transaction qualifies as a sale or disposition in the meaning of the securities statutes.

Of the six cases cited by the plaintiff Bank, four were explicitly distinguished by the Fifth Circuit in *McClure v. First National Bank of Lubbock, Texas, supra,* as being inapplicable to any claim under the 1934 Act.[9]

In *Dopp v. Franklin National Bank,* 374 F.Supp. 904 (S.D.N.Y.1974), the action was brought by the beneficial owner of stock which had been pledged as collateral for a loan, who sought to enjoin the sale of that stock at a private foreclosure sale. The challenged fraud in *Dopp* lay not in the pledge, but in an actual proposed sale.

A similar factual situation is found in plaintiff's final cited case, *Cambridge Cap. Corp. v. Northwestern Nat. Bank of Minneapolis,* 350 F.Supp. 829 (D.Minn.1972), where the court explicitly limited its holding as follows:

"[W]e merely [hold] that, . . . where the securities which were sold were sold at a sheriff's sale, where the party seeking standing possessed prior to the sale a security interest in the securities which were sold, and where, by virtue of its security interest, this secured party was directly entitled to a portion of the proceeds of the sale, that party qualifies as a 'seller' of those securities for the purposes of the standing requirements under § 10(b) and Rule 10b–5." 350 F.Supp. at 834.

In contrast, the Fifth Circuit has ruled in *McClure v. First National Bank of Lubbock, Texas, supra,* that the pledge of securities in that case did not constitute a "sale"

protected by the anti-fraud provisions of § 10(b) of the Securities Exchange Act and Rule 10b–5.

In *McClure* the plaintiff had pledged her stock to support a renewal of a loan made by the bank to a corporation owned by Mrs. McClure and her ex-husband. He misappropriated the loan funds for his own use. The bank eventually foreclosed on the corporation's land which had been given as security for the loan, and Mrs. McClure's stock consequently became worthless.

Mrs. McClure had asserted that her pledge of stock should be considered as a "sale". The Fifth Circuit replied that such pledges are not the type of transaction Congress intended to protect through the 1934 Act.

"A commercial bank in accepting a pledge of stock as additional consideration for the extension of an overdue commercial loan does not necessarily affect the securities industry. A commercial bank's business is lending money not trading in securities. . . . If the bank sells stock pledged as loan collateral, it might then be subjected to liability in connection with the sale if it does not meet the requirements of the anti-fraud provisions of the securities acts, *but mere acceptance of a stock pledge as collateral in a privately negotiated transaction between borrower and lender does not, of itself, bring within the scope of the federal securities acts a transaction otherwise outside their purview.*" 497 F.2d at 495 (Citations omitted; emphasis added.)

■ The court agrees that mere acceptance of a stock pledge as collateral in a commercial loan transaction does not invoke the protection of the federal securities laws. Nonetheless, *McClure* cannot be read to deny the possibility that a pledge may qualify as a "sale". The Fifth Circuit explicitly stated that "We do not doubt that a pledge of securities can constitute a 'sale' in some cases," 497 F.2d at 495.

9. These four cases were brought under various provisions of the 1933 Act. However, as the discussion, *supra,* indicates, this court does not believe that § 17(a) of the 1933 Act provides the basis for a private civil action.

The critical fact pattern needed to effect a "sale" may be discerned at a later point in the opinion where the court noted that "the Bank did not foreclose on Mrs. McClure's pledged stock and did not sell it. Title to it remains in Mrs. McClure. Under these circumstances, her pledge did not constitute a 'sale' of her stock within the meaning of section 10(b) of the 1934 Act and of Rule 10b–5." 497 F.2d at 496.

It is clear that where collateral is foreclosed, the lender has in effect made a forced purchase of the collateral for the amount lent. Foreclosure passes title as surely as a direct purchase. *Tcherepnin v. Knight, supra,* admonishes the courts to construe the securities acts so that "form should be disregarded for substance and the emphasis should be on economic reality." 389 U.S. at 336, 88 S.Ct. at 553.

While Mrs. McClure sought to use the incidental fact that a pledge of securities had been involved in the fraudulent loan transaction, the plaintiff bank seemingly has acquired against its will worthless securities that it would never have obtained had the true facts been exposed.

■ The instant complaint does not allege foreclosure of the counterfeit stocks, which would of course be a futile gesture, but it does assert that the loans issued upon that collateral are not collectible, in default and unpaid. Lincoln Bank has effectively paid $842,000 to buy counterfeit certificates.

The court therefore concludes that Count I does state a claim for relief under the 1934 Act against the Lampe defendants [10] with respect to the pledge of the counterfeit certificates.

### D. Failure to Satisfy F.R.Civ.P. 9(b).

■ Federal Rule of Civil Procedure 9(b) states that

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . . ."

It is well-determined that the requirements of this rule apply to allegations of fraud under the securities acts. *Tomera v. Galt,* 511 F.2d 504 (7th Cir. 1975); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442 (2d Cir. 1972); *Competitive Associates, Inc. v. Fire Fly Enterprise, Inc.,* 59 F.R.D. 336 (S.D.N.Y.1972); see also the extensive list of cases cited in *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir. 1972).

■ Count I indicates that certain representations were made to the plaintiff.[11] Nonetheless, the complaint is fatally wanting due to its failure to inform each defendant of the specific fraudulent acts which constitute the basis of Lincoln Bank's action against the particular defendant.

The purportedly fraudulent representations are contained in paragraph 11 of the complaint. That paragraph states that "[o]n numerous occasions between December 1, 1973 and December 1, 1974" certain representations were made by Lampe, Spaco, Lake Forest and Herber. Paragraph 11(g) alleges that on December 20, 1973, "defendants" made certain additional representations.

It is evident that no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor, except for paragraph 11(g), the date of the utterance. All the representations are lumped together, seemingly in an effort to imply that each defendant is responsible for statements made by the others.

---

10. See Part I–D. for the basis of this court's dismissal of defendants Lake Forest Bank, Federal Insurance Co. and James F. Herber.

11. (1) Lampe was and had been a long-term customer of Lake Forest Bank. (2) Lampe had inherited a large estate from his father. (3) Lampe was trustee and principal beneficiary under a trust agreement, and that the trust contained good and marketable securities worth over $3,500,000. (4) The securities subsequently pledged as collateral were in an escrow account in the Lake Forest Bank. (5) These securities were good and marketable.

Other aspects of the complaint are equally indefinite. Plaintiff alleges that "defendants or one of them" delivered the certificates to the plaintiff, and that Lake Forest Bank breached an unspecified duty to Lincoln Bank, and that Lake Forest Bank "tacitly participated" in the alleged fraud.

■■■ Rule 9(b) seeks to protect defendants from unjustified injury to their reputations and good will, by requiring a greater degree of particularity in averments of fraud than is ordinarily required by the concept of notice pleading established in Rule 8. Thus, a plaintiff alleging fraud must specify the time, place and contents of any alleged false representations, and the full nature of the transaction. *Competitive Associates, supra.*

Plaintiff is singularly unpersuasive in its argument that it requires the aid of discovery in order to obtain "more of the details and particularities of the fraud". Surely Lincoln Bank does not require discovery to learn the time, place, circumstances and contents of conversations to which it was a party.

"It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him, but he can at least identify the particular defendants who allegedly dealt with him, and he can describe the circumstances under which particular defendants dealt directly with him. Under Rule 9(b) . . . there is no justification for the secreting of information identifying the actors in the drama and the occasions on which they directly confronted the plaintiffs." *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774 (D.Colo.1964).

■■■ Nor can plaintiff bank rely upon conclusory language asserting fraud through mere quotation from the statutes, *Segal v. Gordon, supra; Goodall v. Columbia Ventures, Inc.,* 374 F.Supp. 1324, 1333 (S.D.N.Y.1974).[12]

The only certain and particularized allegation in the entire complaint with respect to deceptive or fraudulent conduct in the instant transaction is the assertion that Lampe and Spaco did in fact pledge as collateral certain stock certificates which were counterfeit.

Other than this one allegation, the complaint has failed to properly specify the purportedly illegal conduct and misrepresentations, and gives rise to grave doubts as to the extent to which all of the defendants actually participated in the alleged fraud. It is thus fatally defective with respect to all other allegations of misrepresentations, and is written in a manner making it impossible for Lake Forest, Herber and Federal to prepare their defenses.

Since Count I fails to satisfy the requirements of Rule 9(b) with respect to defendants First National Bank of Lake Forest, James F. Herber, and Federal Insurance Company, it should be dismissed with respect to these defendants for failure to state a cause of action.

### E. *Lampe's Motion to Dismiss Count I.*

Defendant Lampe has moved both in his individual capacity and as trustee for dismissal of the claims against him on the grounds that this complaint is barred by the doctrine of *res judicata.* Lampe asserts that Lincoln Bank has obtained a judgment by confession on the promissory notes that he had executed in the Circuit Court of Cook County, under Case No. 74 L 19175.

■■■ Despite the extensive treatise on *res judicata* submitted in the defendant's memorandum, it fails to address the implication of the statutory provision of § 27 of the 1934 Act which vests exclusive jurisdiction for violations of that Act in the federal courts. Furthermore, § 28 of the same Act provides that the remedies under the Act are given in addition to any other remedies existing in law or equity. Thus it appears that plaintiff could neither bring its 1934 Act claim before the Circuit Court, nor is it

---

**12.** For example, paragraph 8(a): "employed devices, schemes and artifices to defraud plaintiff; . . . (c) "engaged in transactions, practices and courses of business which operated as a fraud and deceit upon plaintiff . . . ."

barred from seeking additional relief under that Act in federal court. This motion is denied with respect to Count I.

### Count II.

The court finds it somewhat difficult to deduce the exact nature of the securities law violation charged in Count II. That Count seemingly relies upon the assumption that a trust was created in behalf of Lincoln Bank as well as Lake Forest Bank when Mrs. Lampe delivered to Lake Forest Bank certain stock certificates issued to Mr. Lampe and endorsed by him to Lake Forest Bank. Plaintiff bank asserts that these stocks were to be held by Lake Forest Bank for the benefit of both banks as partial restitution for loans made to Lampe and his corporations.

Lake Forest transferred these stock certificates two days later, on December 20, 1974, to Federal, which then sold them to one David Hardy on December 23rd, for a consideration in excess of $170,000. These actions were undertaken without the knowledge or consent of Lincoln Bank, and Federal has since then refused to pay any portion of the proceeds of the sale to the plaintiff.

The overriding difficulty with this count is the total absence of any factual allegation indicating fraud or deception in connection with the sale of these stocks on December 23rd.[13] There is no basis from the complaint for any doubt that the transaction was an arms length trade for proper consideration.

Seemingly the actual grievance complained of is either that the sale was undertaken without notice to and consent from Lincoln, or that Fidelity and Lake Forest Bank have failed to perform some obligation to share the proceeds of the sale with Lincoln Bank.

The latter contention is properly a state law action either for breach of contract or fiduciary duty. The fact that the retained funds are the proceeds of a securities transaction does not work alchemy upon garden variety cases; the word "security" is not a judicial philosopher's stone for the conjuration of federal cases. *Shemtob v. Shearson, Hammill & Co., supra,* at 445; *Goodall v. Columbia Ventures, Inc., supra,* at 1330.

Nor does the sale of purported trust property without the consent of a beneficiary rise *per se* to a violation of Rule 10b–5 or § 10(b). The complaint, which is exceptionally vague regarding the creation and nature of the purported trust, does not make any allegation indicating that Lake Forest Bank had any duty to consult with Lincoln Bank regarding the management of the alleged trust assets. And even if such a duty could be construed, an *ultra vires* act by a trustee does not constitute any violation of securities law. Another court has noted:

> "To argue that Koenig merely did not have authority to do what he did without prior Board approval does not make out a claim under Rule 10b–5 since there must be some showing of deception or fraud and not just a showing of corporate mismanagement." *U. S. v. Koenig,* 388 F.Supp. 670, 706 (S.D.N.Y.1974).

In any case it is now clear that Lincoln Bank lacks the standing to contest under either the '33 Act or the '34 Act the sale of securities to Hardy.[14] In the recent case of *Blue Chip Stamps v. Manor Drug Stores, supra,* the Supreme Court has ex-

---

**13.** Lincoln Bank also contends that it qualifies as a purchaser in the December 18th delivery of the stock certificates to Lake Forest Bank. Without devoting argument to this dubious contention, it is clear from the complaint that no fraud is alleged in connection with that particular event.

**14.** Plaintiff has only argued in behalf of the appropriateness of an action under the '34 Act. It is patent that Lincoln Bank also lacks standing under the '33 Act since Section 17(a) has

been construed to provide a cause of action only to a defrauded purchaser. *Simmons v. Wolfson,* 428 F.2d 455, 456 (6th Cir. 1970), *cert. den.,* 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971); *Superintendent of Ins. of State of N. Y. v. Banker's Life & Cas. Co.,* 430 F.2d 355 (2d Cir. 1970), *rev'd. on other grounds,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Furthermore, it is doubtful that any 17(a) claim can survive the dismissal of the parallel '33 Act claim. *Reid v. Mann, supra.*

pressly affirmed the well-known rule promulgated in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir., A. Hand, J.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), which limited the plaintiff class under § 10(b) and Rule 10b–5 to actual purchasers and sellers of securities. Lincoln Bank, as a purported beneficiary, can be classified as neither a purchaser or seller. *Schoenbaum v. Firstbrook*, 405 F.2d 200, 212 (2d Cir. 1968). *See also Rippey v. Denver United States Bank*, 260 F.Supp. 704 (D.Colo.1966), where an action brought by trust beneficiaries was dismissed in accordance with the *Birnbaum* rule because

> "The 10b–5 remedy contemplates a deceptive device in relationship to the purchaser or seller of stock, deception being practiced by either the buyer or the seller." 260 F.Supp. at 715.

The cases relied upon by Lincoln Bank for the proposition that it has standing to sue, *James v. Gerber Products Co.*, 483 F.2d 944 (6th Cir. 1973), and *Local 734, Bakery Drivers Pension Fund v. Continental Illinois National Bank*, CCH Fed.Sec.L.Rep. ¶ 94,-565 (N.D.Ill.1974), can no longer be viewed as applicable on this point after the *Blue Chip* decision.[15]

■ There is additional, substantial justification for dismissing Count II on the basis that Lincoln Bank has failed to factually allege the existence of any interest whatsoever in the stock certificates disposed of in the December 23rd transaction.

It is undisputed that the stock certificates in question were endorsed without restriction and delivered to Lake Forest Bank. There is no allegation in the complaint that Mr. Lampe ever executed any writing indicating that Lake Forest Bank was to hold the certificates in trust for itself and Lincoln Bank.

The complaint does state in paragraph 8 that the shares were delivered "to be held by Lake Forest for the benefit of plaintiff and Lake Forest . . .", and in paragraph 9 that Lake Forest "held them in trust for the benefit of plaintiff and itself." But these are conclusions of law rather than facts sufficient to sustain a complaint against a motion to dismiss.

Count II is an accusation of fraud, and as such is subject to the requirement of F.R. Civ.P. 9(b) that the circumstances constituting fraud shall be stated with particularity. Thus, the basis upon which Lincoln Bank relies for its belief that the stock certificates were delivered in trust must be stated with particularity.

■ From the briefs it is evident that plaintiff bank relies upon a letter signed by *Mrs.* Lampe for its assumption that a trust was established. Certainly a trust cannot be established upon the words of a third party when the purported settlor has made an unrestricted transfer of the purported trust res.

Evidently Lincoln Bank contends that Mr. Lampe in fact dictated the letter, which is neither quoted in nor attached to the complaint. If Lincoln Bank meant to assert that an oral trust was established there is nothing in the complaint to which this assertion can be anchored.

■ For all of the above reasons, it is clear that the plaintiff has failed to state a claim for relief or to allege a basis for federal jurisdiction in the second count of the instant complaint, and said count should be dismissed.[16]

---

**15.** The Supreme Court approved in *Blue Chip* the concept that *Birnbaum* limits standing under 10(b) to "those persons whose active participation in the marketing transaction promises enforcement of the statute without undue risk of abuse of the litigation process." 421 U.S. at 739, 95 S.Ct. at 1927, 44 L.Ed.2d at 551. Lincoln Bank clearly was not an "active" participant in any of the transactions noted in Count II.

**16.** Nor can this count be considered a pendent action to the allegations of a fraudulent pledge of counterfeit stock made in Count I. There is no common nucleus of operative fact between the two separate incidents described in Counts I and II. It is not enough that both counts involve Lampe and that plaintiff bank asserts that it was victimized in each situation.

*Count III.*

Count III is a pendent fraud claim under Illinois common law. Since the allegations of Count III are nothing more than a verbatim reincorporation of Count I, this count partakes of the same fatal defects with respect to its contentions against defendants Lake Forest Bank, Federal and James F. Herber.

Defendant Lampe's motion to dismiss on the grounds of *res judicata* applies to Count III as well as Count I. Since this motion does not establish the exact nature of the state court determination in Case No. 74 L 19175, Lampe has failed to meet his burden of proof that the prior judgment has limiting effect with respect to fraud concerning the alleged counterfeit stock certificates. *Harding Co. v. Harding*, 352 Ill. 417, 186 N.E. 152 (1933).

*Conclusion.*

The pending motions are disposed of as follows:

Motions to dismiss have been filed with respect to all counts by defendants First National Bank of Lake Forest, James F. Herber, Federal Insurance Company, and by John B. Lampe, individually and as Trustee under the John B. Lampe Trust.

The motions of defendants First National Bank of Lake Forest, James F. Herber, and Federal Insurance Company are hereby granted, and these defendants are hereby dismissed from this action. The motion of defendant Lampe is hereby denied.

With respect to Count I, all claims for relief based upon § 17 of the Securities Act of 1933 are hereby dismissed pursuant to F.R.Civ.P. 12(b)(1), as are all claims for relief based upon allegations that the promissory notes executed by defendants Lampe and Spaco constituted securities within the meaning of the Securities and Exchange Act of 1934 and Rule 10b–5.

Count II of the instant complaint is hereby ordered stricken in its entirety for failure to state a claim upon which relief can be granted, and for failure to allege the basis of this court's jurisdiction.