Lawrence E. McKEE, et al., Plaintiffs,

v.

POPE BALLARD SHEPARD & FOWLE, LTD., et al., Defendants.

No. 84 C 4888.

United States District Court, N.D. Illinois, E.D.

Feb. 14, 1985.

Arnold I. Kramer, Robert E. Cleveland, Chicago, Ill., for plaintiffs.

Mitchell S. Rieger, Barbara E. Hermansen, Schiff, Hardin & Waite, Raymond J. Smith, Kenneth Lodge, Ellen Robinson, Burke & Smith Chartered, Chicago, Ill., Robert A. Frederickson, Jack D. Ward, Reno, Zahm, Folgate, Lindberg & Powell, Rockford, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action is before the court on the motions to dismiss of defendants Pope Ballard Shepard & Fowle, Ltd. ("Pope"), Lindgren, Callihan, Weaver, Van Osdol, Ltd. ("Lindgren"), State Bank of Freeport, Northwest Bancorp, Inc., and Dan Heine. Plaintiffs, members of the McKee family, have brought this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), and the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Exchange Act"). Plaintiffs also allege a pendent state claim of conversion. As the parties are clearly not of diverse citizenship, the court's subject matter jurisdiction rests on the allegations of fraud under RICO and the Exchange Act.

### Allegations

In plaintiffs' amended complaint they seek damages in excess of five million dollars arising from injuries brought about by defendants' alleged fraudulent activity. All defendants were involved in a transaction involving the sale of banks of which plaintiffs were the controlling shareholders and of four parcels of land of which plaintiffs were the owners. The defendants are identified as follows: Pope is a professional corporation of attorneys at law; Northwest Bancorp, Inc. is a corporation holding the capital stock of the Bank of Freeport; the Bank of Freeport is a full service bank; Heine is a president and director of Northwest and/or the Bank of Freeport; and Lindgren is a professional corporation of certified accountants. (First Amended Complaint ¶¶ 6–10.)

Plaintiffs list the property that is the subject of this action at ¶¶ 12–13. This property consists of shares of stock in five banks valued at about four million dollars and four parcels of real estate valued at about one and one-half million dollars. Plaintiffs complain generally of having been fraudulently coerced to enter "agreements" that conveyed all of this property to the Bank of Freeport in exchange for release of "defaulted indebtedness" owed by plaintiffs to that bank and others. (*Id.* at ¶ 18.)

All of the pertinent factual allegations concerning the fraudulent activities of these five defendant persons and entities are found in ¶¶ 14–29. These allegations may be summed as follows: all defendants, along with other persons, coerced plaintiffs into entering into the above-described agreements. However, none of the plaintiffs' debts was in default and the value of the conveyed property far exceeded plaintiffs' total debt. The Bank of Freeport unlawfully used plaintiffs' bookkeeping information in preparing these agreements. (*Id.* at ¶ 14.) Plaintiffs were clients of Pope and Lindgren. Pope represented Northwest and the Bank of Freeport in preparing the agreements. (*Id.* at ¶ 15.) Moreover, Lindgren furnished accounting information to Northwest and the Bank of Freeport in furtherance of the preparation of the agreements. (*Id.* at ¶ 16.)

The Bank of Freeport has not released the debt. (*Id.* at ¶ 22.) However, the Bank of Freeport has taken control of three banks, and refuses either to return control or to make an accounting for the assets and operations of these banks. It is further alleged that the Bank of Freeport purchased plaintiffs' debts at a discount, for which it failed to account to plaintiffs. The final allegations are that "defendants" have refused to return the conveyance documents to plaintiffs and to allow plaintiffs to examine the books and records of the conveyed banks.

While these factual allegations are quite broad, the allegations of fraud are broader still. In ¶¶ 30–37, plaintiffs attempt to set forth a claim under the Exchange Act. Each of defendants, alone or together, allegedly contrived a scheme to defraud plaintiffs. (*Id.* at ¶ 31.) Regarding the agreements, "each of the Defendants made one or more untrue statements of material fact and/or omitted to state other material facts necessary in order to make the statements … not misleading…." (*Id.*) The statements occurred in connection with the Bank of Freeport's and Northwest's recommending the sale of securities. Each misrepresentation was made "with knowledge, participation, cooperation, aid, abetment and assistance of each of the Defendants." (*Id.* at ¶ 34.) Heine was controlled by the Bank of Freeport and Northwest, which are thus liable jointly and severally with him. (*Id.* at ¶ 36.)

The RICO allegations are found at ¶¶ 38–45. Plaintiffs allege that the RICO enterprises are Northwest and the association in fact are Northwest, Heine, and the Bank of Freeport. (*Id.* at ¶ 40.) The predicate acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, are alleged broadly: "Defendants on two or more occasions used or caused to be used the United States mails" and "communicated, or caused communications to be made … by wire … two or more times" in furtherance of the scheme.

(*Id.* at ¶ 41(a–b).) Securities fraud is also alleged as underlying the RICO violations.

### Legal Discussion

Defendants move to dismiss this action under Rules 8, 9(b), and 12(b)(6). The court will address only the arguments under Rule 9(b), as they dispose of the motions to dismiss in full. The court finds that plaintiffs have failed to plead fraud with particularity, as required under Rule 9(b). The first amended complaint is therefore dismissed. Plaintiffs shall file a second amended complaint, following the guidelines set forth in this opinion, by March 15, 1985.

Federal Rule 9(b) requires that in allegations of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." The violations of the Exchange Act in question here, which are predicated on fraud, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), must comply with this special pleading requirement. *Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975); *Zerman v. Ball*, 735 F.2d 15, 2 (2d Cir.1984). Similarly, the allegations of fraud underlying a RICO claim must be pled with particularity. *Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 747 F.2d 384, 405 (7th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985). Here, the predicate acts are mail, wire, and securities fraud and all must therefore be pled in compliance with Rule 9(b).

The Seventh Circuit has made clear that Rule 9(b) should be read together with Rule 8. *Tomera*, 511 F.2d at 508. The Court described the relationship between these two rules as follows:

> Rule 8 requires that a plaintiff give through his pleadings notice to defendant of the nature of his claims. [Citations omitted.] It urges the plaintiff to make known his claims simply and concisely in short, plain statements. With these principles in mind, the purpose of rule 9 becomes clear. Rule 9 lists the actions in which slightly more is needed for notice. In a fraud action, a plaintiff need also state "with particularity" the circumstances constituting the fraud.

*Id.* To determine whether a pleading has satisfied Rule 9(b), the rule's purposes should be kept in mind:

> The rule … ensures that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense. [Citations omitted.] Second, it eliminates those complaints filed "as a pretext for discovery of unknown wrongs." [Citation omitted.] The Second Circuit explained: "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one." [Citation omitted.] … Third, Rule 9(b) seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill. [Citation omitted.]

*In re Commonwealth Oil/Tesoro Petroleum Corporation Securities Litigation*, 467 F.Supp. 227, 250 (W.D.Tex.1979). *See Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd*, 636 F.2d 1201, 1203, 1206 (2 Cir. 1980); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 540 (N.D. Ill.1981) (Rule 9(b) should allow framing of responsive pleading and evidence "a reasonable belief on the part of the plaintiff that there is merit to the claim").

Dozens of courts have attempted to prescribe the more detailed pleading requirements of Rule 9(b), but all have agreed that at the least, a plaintiff pleading fraud must "specify the time, place and contents of any alleged false representations, and the full nature of the transaction." *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1279 (N.D.Ill.1976); *see Haroco*, 747 F.2d at 405. This should include the identity of the person making the misrepresentations, the content of the misrepresentations, and how the misrepresentations were communicated to plaintiff. *Zerman*, 735 F.2d at 22.

■ The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which

> no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor . . . the date of the utterance.

*Lincoln*, 414 F.Supp. at 1278. *See Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 745 (N.D.Ill.1981). In addition, under Rule 9(b) plaintiffs are expected to allege events from which fraud and other wrongdoing may be inferred. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) ("It is reasonable to require that the plaintiffs specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge"); *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1124 (S.D.N.Y.1982) ("plaintiff must allege some facts from which an inference of scienter can be drawn"); *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522–23 (S.D.N.Y.1977) (plaintiffs failed to allege facts from which alleged overstatement of accounts receivable could be inferred).

■ This discussion demonstrates that the first amended complaint is fatally deficient. A review of the allegations reveals that Pope represented Northwest and the Bank of Freeport in the transaction in question. Plaintiffs are allegedly Pope's clients, but it is not clear that Pope represented plaintiffs in this transaction. Certainly, there are no allegations that Pope had a conflict of interest or divided loyalties in its work on the transaction. Plaintiffs allege that Lindgren is plaintiffs' accountant and that it delivered documents to Northwest and the Bank of Freeport. The rest of the allegations concern the other defendants. Regarding the banking defendants, they are alleged to have overval-

ued the extent of plaintiffs' debt, if any, and received plaintiffs' property in release of that debt. They then refused to open the conveyed entities' records to plaintiffs or make an accounting to plaintiffs of those entities' operating records. In addition, the banking defendants have not disclosed the conveyance documents. These allegations are inadequate to state claims of fraud under Rule 9(b) against any defendant.

First, the pleading fails to identify any activities by Pope and Lindgren that lead to the inference of their participation in fraudulent activity. Their acts, professional representation and the conveyance of documents, are neutral on their face. They may have been totally unrelated to the fraud in question: the overvaluing of the amount of plaintiffs' alleged debt, the failure to discharge the debt, and the refusal to disclose records of the conveyed corporations. Not a single representation or omission is attributed to these defendants, much less a date on which the representation or omission occurred. Second, the defendants are grouped together indiscriminately, with an inference that each defendant is responsible for the acts of the others. However, there is no support in law for such a finding in a case such as this where scienter is an element of both federal claims and the defendants are apparently not connected by any agency or other relationship. *See Adair*, 526 F.Supp. at 745 (insufficient to group defendants together as liable for each others' acts). As to the banking defendants, there is perhaps more reason to suspect wrongdoing; concealment of documents may be interpreted as an act in furtherance of a fraudulent scheme. However, there is still no indication supporting the inference of overvaluing which is the basis of the fraud. The plaintiffs do not describe a single event on which they allegedly relied. The court must have some description of the times, dates, parties, and contents of misrepresentations which underlie the alleged fraudulent scheme. This is especially true in a

RICO action, in which two predicate acts must be alleged.

■ Plaintiffs urge repeatedly that the transaction in question was an important event for all parties involved, and thus "it is inconceivable that any of the Defendants involved in this conspiracy would not be aware of the charges or the nature of their alleged participation in such scheme." (Plaintiffs' Response to Lindgren, filed 12/7/84, p. 7.) They indicate that discovery will reveal the finer elements of the scheme. Both arguments are unavailing. To say that a defendant knows the nature of the alleged fraud by having been involved in the underlying transaction proves far too much; any defendant with individual contacts to a plaintiff would have such knowledge. To allow a plaintiff to plead simply, "defendants know what they did," would render superfluous even the liberal requirements of Rule 8. In any case, such an argument does not satisfy other purposes behind Rule 9(b), namely, that complaints should not be filed as a pretext for discovery and that defendants' reputations be protected from unfounded charges of fraud.

■ The suggestion that discovery will cure the evils of an impermissibly vague complaint has likewise been rejected. The court in *Lincoln National Bank* commented that "[s]urely plaintiff does not require discovery to learn the time, place, circumstances and contents of conversations to which it was a party." 414 F.Supp. at 1279. The court continued, quoting from *Trussell v. United States Underwriters, Ltd.*, 228 F.Supp. 757, 774 (D.Colo. 1964):

> It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him, but he can at least identify the particular defendants who allegedly dealt with him, and he can describe the circumstances under which particular defendants dealt directly with him.

414 F.Supp. at 1279. The requirements of Rule 9(b) are directed in part to preventing use of the liberal discovery procedures as a method for determining whether a fraud occurred at all.

Hence, while plaintiffs repeatedly claim that they have described the "bare bones of a fraudulent scheme," (Plaintiffs' Response to Pope Motion, filed 12/7/84, pp. 4, 7; Plaintiffs' Response to Lindgren Motion, supra, at 4), the court finds that they have not. The first amended complaint fails properly to allege fraud against defendants, and must be dismissed.

The court therefore dismisses this complaint as inadequate under Rule 9(b). Plaintiffs are directed to file a second amended complaint by March 15, 1985, following the standards set forth in this opinion for the pleading of fraud.

It is so ordered.