**Anne BANOWITZ, et al., Plaintiffs,**

v.

**The STATE EXCHANGE BANK, et al., Defendants.**

**No. 84 C 2818.**

United States District Court, N.D. Illinois, E.D.

Jan. 18, 1985.

Susan M. Keegan, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for plaintiffs.

Paul E. Freehling, Pope, Ballard, Shepard & Fowle, Ltd., Walter M. Jones, McDermott, Will & Emery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Eight individual investors [1] (collectively "plaintiffs") sued the State Exchange Bank ("Bank") and certain officers, directors and owners [2] of both the Bank and the now bankrupt State Exchange Finance Company ("SEFCO") (collectively "defendants") in a six-count Amended Complaint alleging the following violations by defendants: (1) the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–68 (Count One); (2) Securities Exchange Act of 1934 ("1934 Act") § 10(b), 15 U.S.C. § 78j ("Section 10(b)") and related SEC Rule 10b–5 (Count Two); (3) Securities Act of 1933 ("1933 Act") § 17(a), 15 U.S.C.

1. Namely, Anne Banowitz; Fred Faser; Mary K. Faser; Wayne T. Hittle; Ida A. Hittle; Bernard Warner; Rachel Warner; and Vivian Borneman.

2. Namely, Marsha E. Adams, as Executor of the Estate of Fred E. Adams; Charlotte Jung; Ronald A. McKee; John J. Deery; Allen H. Cummins; Jack Carpenter; Bryce Burton; Robert Koch; Bill Annis; Margaret Swanson; Richard P. Smith; Glenn Overmyer; William F. Laramor; Robert E. Grossman; Herschel J. Umbaugh; John R. Mars; Vivian A. Bush; David Kesling; and Peter Kesling.

§ 77q ("Section 17(a)") (Count Three); (4) the Indiana Securities Regulation Act ("Indiana Act") § 23–2–1–3, 23 Ind.Code § 23–2–1–3 ("Section 23–2–1–3") (Count Four); (5) common law fraud (Count Five); and (6) common law breach of fiduciary duty (Count Six). Defendants now move to dismiss the Amended Complaint under Fed.R. Civ.P. 12(b)(6). For the reasons stated in this Memorandum Opinion and Order, defendants' motion is denied.

## FACTS [3]

On various dates beginning July 7, 1982 and continuing until December 18, 1982, officers and employees of the Bank sold to the individual plaintiffs investment notes issued by SEFCO, totalling $790,826. At the time of these sales, plaintiffs were told that SEFCO was a financially sound and profitable company and that SEFCO investment notes were safe, high quality investments. Beginning in approximately August, 1982, however, SEFCO became insolvent, and on December 30, 1982, SEFCO filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in the United States Bankruptcy Court for the Northern District of Indiana.

In order to understand the involvement of the various defendants, it is necessary to understand the relationship between SEFCO and the Bank. SEFCO is an Indiana corporation incorporated in 1923 by certain owners of the Bank. Prior to its bankruptcy, SEFCO was in the business of making commercial loans to persons and corporations in Northern Indiana. At all relevant times, the shareholders of the Bank were also shareholders of SEFCO, and SEFCO and the Bank shared common officers and directors. All of SEFCO's business was conducted by employees of the Bank, and SEFCO's principal place of business was located in the Bank's main office building in Culver, Indiana.

Beginning sometime in January 1979, the Bank, under the direction of defendants Adams and Deery, allegedly engaged in the following conduct: the Bank caused SEFCO to make numerous loans to various officers and directors and related persons or businesses, without adequate documentation or collateral and at lower than market interest rates; the Bank caused SEFCO to pay various personal expenses of defendants Adams, Deery, and other Bank/SEFCO officers and directors; the Bank authorized the transfer of unduly risky or defaulted loans from the Bank to SEFCO; and the Bank caused SEFCO to acquire for cash certain real estate owned or held for collateral by the Bank at greater than fair market value. The officer and director defendants either authorized, permitted, or recklessly disregarded the above actions.

By approximately January 1, 1982, the above conduct had caused a significant drain on SEFCO's cash and had left SEFCO with a large number of nonperforming loans with inadequate or non-existent collateral. The officer and director defendants became aware of SEFCO's condition, and various defendants, along with their relatives and business interests, began to further drain SEFCO of cash by secretly redeeming their investment notes, totalling approximately $6,200,000, during 1982. Also during 1982, defendants caused SEFCO to prepare and disseminate quarterly financial statements and one annual report which materially misrepresented SEFCO's financial condition. No defendant ever disclosed to plaintiffs any facts regarding the above-stated conduct or the fact that SEFCO was insolvent beginning in at least August, 1982 and thus would not be able to redeem its investment notes in the ordinary course of business. Indeed, all but one of the investment notes held by the various plaintiffs were issued between August and December of 1982, at which time the Bank and its employees misrepresented to plaintiffs the financial condition of SEFCO and the security of the notes. All of the director, officer, and shareholder defendants either engaged in, knew of, or recklessly

---

3. On a motion to dismiss, all well-pleaded allegations of the complaint are taken as true, and all reasonable factual inferences are drawn in the opponent's favor. *Mathers Fund, Inc. v.* *Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Accordingly, here the facts pleaded by plaintiffs are assumed to be true.

disregarded the above conduct. Because of these misrepresentations and omissions, plaintiffs purchased SEFCO investment notes which have not been redeemed since their dates of maturity, causing them to suffer $790,826.11 in damages.

*Rule 9(b) Requirements*

Defendants first argue that Counts One, · Two, Three and Five of the Amended Complaint fail to plead fraud with the specificity required by Fed.R.Civ.P. 9(b) and thus should be dismissed. Rule 9(b) of the Federal Rules of Civil Procedure states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

The Seventh Circuit has interpreted Rule 9(b) liberally, stating that it must be read in conjunction with the notice pleading standard of Rule 8. *Tomera v. Galt,* 511 F.2d 504 (7th Cir.1975). The Court in *Tomera* held that Rule 9(b) was satisfied by a "brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Id.* at 509.

This Court finds that plaintiffs have satisfied the requirements of Rule 9(b): the Amended Complaint specifically describes the alleged misrepresentations and non-disclosures of material information as well as the alleged self-dealing of SEFCO insiders. Defendants have been given notice of the alleged fraud sufficient to allow adequate responsive pleading. *See Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981). It is not necessary for plaintiffs to allege evidentiary details that will be used to support the claim of fraud at a later date. *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308 (N.D.Ill.1984). In a securities fraud case, plaintiffs are not required "... to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of defendants." *Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981). Plaintiffs here have alleged specific facts where available. For example, plaintiffs have set forth the specific list of notes redeemed by insiders, and they have specified the exact contents of the misstatements about the SEFCO notes made to them.

Defendants also contend, however, that even if the fraudulent conduct was alleged in sufficient detail, the Amended Complaint is still inadequate in one important respect. Defendants argue that where, as here, multiple defendants are involved, the complaint must provide reasonable notice of the part each defendant allegedly played in the scheme. *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976); *Adair,* 526 F.Supp. at 744. That rule is modified, however, where the multiple defendants are all corporate insiders. Numerous courts have held that the conduct of such individuals need not be specified and the fraudulent acts complained of need not be attributed to certain persons if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations. *See, e.g., Pellman v. Cinerama, Inc.,* 503 F.Supp. 107, 111 (S.D.N.Y.1980) (and cases cited therein).

A recent Northern District of Illinois case supports this conclusion. In *Swanson v. Wabash, Inc.,* 577 F.Supp. 1308 (N.D.Ill. 1983), plaintiff sued a corporation and certain of its former officers and directors alleging fraud and self-dealing in connection with a tender offer. Similarly to the instant case, the complaint in *Swanson* specified the fraudulent acts in which all the defendants allegedly were engaged, including the misstatements and omissions of material fact, and alleged that "all the defendants knowingly 'participated or substantially aided and abetted consummation of the Offer through the dissemination of false and misleading statements.'" *Id.* at 1321. The *Swanson* court stated: "'This is enough. More information can be gathered through discovery.'" *Id.* (quoting *Tomera v. Galt,* 511 F.2d at 509).

Because the Amended Complaint satisfies the pleading standard for fraud, defendants' motion to dismiss Counts One,

Two, Three, and Five for failure to satisfy the requirements of Rule 9(b) is denied.

*The RICO Count*

The elements of a civil RICO claim are set forth in 18 U.S.C. §§ 1962 and 1964. Under Section 1964, a plaintiff must allege injury to his "business or property," and that injury must be "by reason of violation of § 1962." To allege a violation of Section 1962(c), a plaintiff must allege that the defendant was employed by or associated with an enterprise engaged in, or the activities of which affected, interstate or foreign commerce, and that the person conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 387 (7th Cir.1984); *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1167–68 (5th Cir.1984). Defendants contend first that Count I does not allege a "pattern of racketeering activity" because it does not adequately plead mail, wire, or securities fraud, and second, that plaintiffs have failed to allege a "racketeering injury" as required by RICO.

■ The recent decision of the Seventh Circuit in *Haroco, supra,* definitively refutes both of the arguments. The Seventh Circuit observed that RICO's terms are very broad. For example, where plaintiffs in commercial fraud cases allege only two acts of mail fraud, that constitutes a "pattern of racketeering activity," and mail fraud consists of using the mails for the purpose of executing a scheme or artifice to defraud. *Haroco*, at 386–387. Plaintiffs' allegations of defendants' scheme to defraud plaintiffs by, *inter alia,* selling them investment notes in an insolvent company by use of the wires or mails to accomplish their fraudulent scheme clearly are sufficient to allege a "pattern of racketeer-

ing" under the Seventh Circuit's broad construction of that RICO term.

■ Defendants also assert that Count I must be dismissed because the Amended Complaint fails to allege a "racketeering injury."[4] Defendants rely on a trilogy of Second Circuit cases, *Sedina, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984); and *Furman v. Cirrito*, 741 F.2d 524 (2d Cir.1984), to assert that the requirement that injury be "by reason of" the alleged racketeering activity is not satisfied by damages allegedly resulting from the claimed predicate offenses of mail, wire and securities fraud. The Seventh Circuit in *Haroco*, however, specifically rejected the Second Circuit's imposition of a racketeering injury requirement. The court held that a civil RICO plaintiff need not allege injury beyond any injury resulting to business or property from the underlying acts of racketeering. *Haroco*, at 398–399. Plaintiffs in the instant case satisfactorily plead "racketeering injury" by alleging that defendants' RICO violation caused them $790,826.11 in damages.

Because the Amended Complaint contains sufficient allegations of a "pattern of racketeering activity" and of "racketeering injury" to state a RICO claim, defendants' motion to dismiss Count One is denied.

*The 10b–5 Claim—The Definition of "Security"*

■ Count Two of the Amended Complaint is based on the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (the "1934 Act"), and alleges that defendants violated Section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder. Defendants contend that Count Two fails to state a claim because the SEFCO investment notes are not "securities" within the meaning of the 1934 Act. This argument

---

**4.** An example given by defendants in their Memorandum in Support best illustrates the concept of "racketeering injury":

For example, if a retail clothing store competes unfairly by charging lower prices because it is subsidized with the proceeds of multiple interstate shipments of stolen property, a competing retail store could sue under

RICO because it has been injured in its business by the other store's pattern of racketeering. By contrast, the victim of the thefts of multiple interstate shipments, whose property is stolen and transported, cannot sue under RICO, although the victim has a state law claim arising from the theft.

Memorandum at 9.

is based upon the exception, contained only in the 1934 Act, to the definition of a "security": "The term 'security' ... shall not include ... any note ... which has a maturity at the time of issuance of not exceeding nine months...."[5] Because plaintiffs' notes matured in less than nine months,[6] defendants claim that there can be no cause of action under Rule 10b–5.

The real issue here is whether the notes in this case are "commercial promissory notes" or "investment securities." In *Sanders v. John Nuveen & Co.*, 463 F.2d 1075 (7th Cir.), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972), the Seventh Circuit held that short term notes with maturities of less than nine months were "securities" protected by Section 10(b) of the 1934 Act and Rule 10b–5. The Seventh Circuit explained the meaning of the statutory exception as follows:

> ... when Congress spoke of notes with a maturity not exceeding nine months, it meant commercial paper, not investment securities. When a prospective borrower approaches a bank for a loan and gives his note in consideration for it, the bank has purchased commercial paper. But a person who seeks to invest his money and receives a note in return for it has not purchased commercial paper in the usual sense. He has purchased a security investment.

*Id.* at 1080. The court further implied that where the purchasers of notes are individual members of the public, an inference is raised that the notes are investment securities. *Id.* at 1080 n. 18. In *C.N.S. Enterprises, Inc. v. G. & G. Enterprises, Inc.*, 508 F.2d 1354 (7th Cir.) *cert. denied*, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975), the Seventh Circuit reiterated its holding in *Sanders* and again embraced what is often referred to as the "commercial-investment dichotomy." The court stated that in determining whether a note was a "security": "The ultimate question is whether the plaintiffs are simply borrowers in a commercial transaction who are not protected by the 1934 Act or investors in a securities transaction who are protected." *Id.* at 1359.[7]

Defendants' central argument against following the established Seventh Circuit approach to determining whether a promissory note is a "security" within the meaning of the 1934 Act is that the Supreme Court's opinion in *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982), renders earlier contrary rulings moot. This argument, however, stems from a misinterpretation of the Court's decision in that case.

Indeed, *Marine Bank v. Weaver* actually lends support to the Seventh Circuit's approach to the status of short-term notes as "securities." In *Marine Bank*, the Court

---

**5.** 15 U.S.C. § 78c. The complete definition reads:

(a) When used in this chapter, unless the context otherwise requires

(10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or to purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceed-

ing nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.
*Id.*

**6.** According to the Amended Complaint, each of the instruments on which plaintiff Banowitz bases her claim had a maturity date of only three months after issuance. Although the maturity dates of the notes purchased by the other plaintiffs are not stated, this information is not necessary in light of our disposition of this issue.

**7.** The situation in *C.N.S. Enterprises* was just the reverse of that in *Sanders v. John Nuveen & Co.*, 463 F.2d 1075 (7th Cir.1972). In *C.N.S. Enterprises*, the Seventh Circuit used a similar "context-over-text" analysis to determine that a long-term note, although within the literal definition of "security," was outside the intended protection of the securities laws.

endorsed the approach to the statutory definition which originated in the promissory note cases by relying on the qualifying statement which precedes the listed instruments in the definition: "... unless the context otherwise requires ..." *Id.,* 102 S.Ct. at 1223. The Court held that although "certificates of deposit" are specifically listed in the definition as a type of "security," the certificate of deposit purchased by respondents was not a "security" because the holders of bank certificates of deposit are adequately protected by the federal banking laws, and thus, the protection of the antifraud provisions of the federal securities laws was unnecessary in that "context." *Id.* at 1224–45. Although it is true that the Court did note that "[t]he statutory definition excludes only currency and notes with a maturity of less than nine months," that statement was made simply to illustrate the great breadth of the definition. *Id.,* 455 U.S. at 555–56, 102 S.Ct. at 1223–24. Both the analysis and the holding of the Supreme Court in *Marine Bank* refute the implication that a note with a maturity of less than nine months can in no circumstances be a "security" within the 1934 Act. Thus, *Marine Bank v. Weaver* supports the Seventh Circuit's focus on the context of the transaction rather than on the literal meaning of the statutory words.[8]

In this case, plaintiffs' allegations clearly demonstrate that plaintiffs did not borrow money from SEFCO in return for a commercial promissory note, but rather that they gave their money to the finance company in return for investment securities.[9] This court therefore holds that the SEFCO investment notes purchased by plaintiffs are "securities" within the meaning of the 1934 Act and the protection of Rule 10b–5.

Finally, defendants ask that Count Two be dismissed for plaintiffs' failure to adequately plead the interstate commerce element. In their Amended Complaint, plaintiffs simply allege that defendants used the means and instrumentalities of interstate commerce and the mails in connection with their fraudulent conduct. In support of their claim that a complaint alleging violation of Section 10(b) and Rule 10b–5 must state specific *facts* showing that interstate commerce or the mails were used, defendants cite only the case of *Gordon v. Lipoff,* 320 F.Supp. 905, 914 (W.D. Mo.1970). Defendants inexplicably disregard the holding of the Seventh Circuit that averments describing the "bare bones of a fraudulent scheme" coupled with plaintiffs' allegations that defendants used the mails and other instruments of transportation in interstate commerce were sufficient to state a claim under Rule 10b–5. *Tomera v. Galt,* 511 F.2d 504, 506 (7th Cir. 1975).

Defendants' motion to dismiss Count Two of the Amended Complaint is therefore denied.

### The Section 17(a) Claim—Private Right of Action

Defendants make three separate attacks on Count Three of the Amended Complaint: (1) they assert that plaintiffs have not pled fraud with sufficient specificity; (2) they assert that plaintiffs have not adequately alleged the interstate commerce element; and (3) they assert that no private right of action exists under Section 17(a) of the 1933 Act. Their first two objections have already been addressed, and the third is addressed below.

The Courts of Appeals are sharply divided as to whether there exists an implied private right of action for damages under

---

**8.** Defendants' attempt to show that post-*Marine Bank,* the Seventh Circuit has reversed its earlier stance, is also unfounded. The court in *Hunssinger v. Rockford Business Credits, Inc.,* 745 F.2d 484, 492, n. 1 (7th Cir.1984), did not "... observe, without qualification that short-term notes are *not* securities...." Defendants' Reply Memorandum at 9 n. 5. In fact, the court in *Hunssinger* actually noted that the short-term note exception can only apply to "prime quality *commercial paper.*" *Id.* (emphasis added).

**9.** In their Amended Complaint, plaintiffs further allege that at the time of purchase, certain defendants promised them that the SEFCO notes were "safe, high quality investments." This case thus differs from a case cited by defendants, *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270 (N.D.Ill.1976), where there was "nothing whatsoever in the complaint to indicate that [the] promissory notes were not run-of-the-mill commercial notes." *Id.* at 1275.

Section 17(a) of the Securities Act,[10] and the Supreme Court has consistently reserved opinion on the issue.[11] This Circuit has sided with the majority in implying a private right in earlier holdings which are directly applicable here. *E.g., Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, 1246 (7th Cir.1977), *rev'd on other grounds,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). Significantly, in each of the Seventh Circuit cases where the court implied a private right of action under Section 17(a), a Rule 10b-5 claim was also alleged.[12] The Seventh Circuit's position was recently articulated in *Peoria Union Stock Yards Co. v. Penn Mutual Life*

Insurance Co., 698 F.2d 320, 323 (7th Cir. 1983). In *Peoria Union,* Judge Posner declared that under the prevailing view, Section 17(a) can be enforced by private damage suits, but he added that "it is not a terribly important question" because Section 17(a) is so similar to Rule 10b-5, where a private right of action is well-established. *Id.*[13]

In this case, too, plaintiffs allege a Rule 10b-5 claim as well as a Section 17(a) count. Thus, this Court, following the path forged by the Seventh Circuit, holds that there is no need to decide whether Section 17(a), standing alone, may give rise to a private cause of action.[14] Accordingly, the

**10.** Compare *Keys v. Wolfe,* 709 F.2d 413, 416 (5th Cir.1983), *Landry v. All American Assurance Co.,* 688 F.2d 381, 384–91 (5th Cir.1982), and *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (holding no private right of action) with *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981) and *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979) (holding such a right exists).

**11.** *See, e.g., Herman & MacLean v. Huddleston,* 459 U.S. 375, 378, n. 2, 103 S.Ct. 683, 685, n. 2, 74 L.Ed.2d 548 (1983); *Aaron v. SEC,* 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980).

**12.** *See Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, 1246 (7th Cir.1977), *rev'd on other grounds,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1293 (7th Cir.), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1975); *Surowitz v. Hilton Hotels Corp.,* 342 F.2d 596, 604 (7th Cir.), *rev'd on other grounds,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1965).

In *Nemkov v. O'Hare Chicago Corp.,* 592 F.2d 351 (7th Cir.1979), the Seventh Circuit specifically stated that it did not reach the issue of whether there is an implied cause of action under Section 17(a) of the 1933 Act absent a viable claim based on Section 10(b) of the 1934 Act and Rule 10b-5. *Id.* at 353 n. 2 (court affirmed dismissal of case based solely on statute of limitations grounds).

**13.** This reasoning appears to have been employed initially by Judge Friendly in his concurrence in *SEC v. Texas Gulf Sulpher Co.,* 401 F.2d 833 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969) and has been heavily relied upon since by the courts which do imply a private right of action. *See, e.g., Ste-*

*phenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981). It is interesting that circuit courts still rely upon this rationale in light of *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), where the Supreme Court in an SEC enforcement action held that, unlike Rule 10b-5, subsections 17(a)(2) and 17(a)(3) do not require proof of scienter. *Id.* at 695–701, 100 S.Ct. at 1955–1958.

**14.** The several recent cases from the courts in the Seventh Circuit which have declined to imply a private right of action under Section 17(a) contain facts distinguishable from the instant case. In *North American Financial Group, Ltd. v. S.M.R. Enterprises, Inc.,* 583 F.Supp. 691, 695–97 (N.D.Ill.1984), the court was confronted by a "naked" Section 17(a) violation, unaccompanied by a Rule 10b-5 claim. Similarly, in *Roskos v. Shearson/American Express, Inc.,* 589 F.Supp. 627 [current] Fed.Sec.L.Rep. (CCH) ¶ 91, 624 (E.D.Wis.1984), the plaintiff had alleged a count based in negligence. The Supreme Court has held in an SEC enforcement action that subsections 17(a)(2) and 17(a)(3) may be grounded in simple negligence, *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980), whereas scienter is an essential element of a Rule 10b-5 suit, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). Thus, in both *North American* and *Roskos,* the question of the existence of a private right of action under Section 17(a) was significant and possibly outcome-determinative.

In the instant case, however, the Amended Complaint includes both Section 17(a) and Rule 10b-5 counts, and all allegations are grounded in scienter. This Court therefore follows the approach of both Judge Posner and Judge Shadur:

This Court will take a leaf from the Court of Appeals' book in *Peoria Union Stock Yards* and treat the Section 17(a) issue as irrelevant—that is, not necessary for decision—un-

motion to dismiss Count Three of the Amended Complaint is denied.

*Pendent State Law Counts*

■ Defendants also move to dismiss Counts Four, Five, and Six, the pendent counts based on state law. Count Four alleges a violation of the Indiana Securities Regulation Act; Count Five is grounded in common law fraud; and Count Six asserts breach of fiduciary duty. Because this Court has declined to dismiss plaintiffs' federal claims, there is no reason to dismiss the state claims for lack of pendent jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Further, defendants' charge that plaintiffs have failed to adequately plead Counts Five and Six has been addressed above. Accordingly, the motion of certain defendants to dismiss the Amended Complaint is denied in full. Defendants are granted thirty days to file an answer to the Amended Complaint.

See also D.C., 600 F.Supp. 1479.

less a substantive distinction between Rule 10b–5 and Section 17(a) develops. This Court therefore defers any current decision as to the independent viability of a Section 17(a) claim.

*Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308 (N.D.Ill.1984).